UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:06-CV-160-F

| | |
|---|---|
| McSHELLA C. PUMMILL, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>UNITED STATES, )<br>Defendant. )<br>) | ORDER |

This matter is before the court on the Plaintiff's Motion for Summary Judgment [DE-21] and Defendant's Motion to Dismiss [DE-23]. The motions have been fully briefed and are ripe for ruling.

## I. PROCEDURAL AND FACTUAL HISTORY

Plaintiff McShella C. Pummill ("Ms. Pummill") initiated this action by filing a Complaint in this court on October 24, 2007, against the Defendant United States ("the Government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* Ms. Pummill seeks damages arising from the Government's allegedly negligent handling of her deceased husband's life insurance beneficiary form.

The undisputed facts are as follows:

This case centers upon a death benefit claim on the life of Staff Sergeant Richard T. Pummill ("SSgt. Pummill") under the Servicemembers' Group Life Insurance ("SGLI") program, Group Policy G-32000 ("the Policy"). SGLI is the life insurance program available to all members of the uniformed services. Members who are on active duty, like SSgt. Pummill, are automatically covered for the maximum amount of coverage, in this case, $400,000.00. SSgt. Pummill's Policy was provided by The Prudential Life Insurance Company of America ("Prudential") which administers its SGLI policies through its Office of Servicemembers' Group Life Insurance. Under the terms of the Policy,

servicemembers may designate one or more beneficiaries to receive payment of insurance proceeds by completing a SGLV 8286. With regard to the effectiveness of a SGLV 8286, the Policy provides the following:

> When completed and dated, the form SGLV 8286 must be submitted to the members' uniformed service because a beneficiary designation is not effective until it is received by the uniformed service. The uniformed service should immediately date and certify it as received. It should properly be placed in the member's personnel file. Only the latest beneficiary designation in the personnel file will be considered valid.

Mem. in Supp. of Mot. to Dismiss [DE-24], Ex. 1, SGLI Handbook.

On July 16, 2005, SSgt. Pummill, together with his new wife, Ms. Pummill, went to the Division Personnel Administration Center, Camp Lejeune, North Carolina, for a pre-deployment audit. As part of the audit, SSgt. Pummill revised, reviewed and signed his SGLV 8286 to reflect Ms. Pummill as the 100% beneficiary of the Policy. A Chief Warrant Officer verified the accuracy of the SGLV 8286 and certified it. However, due to what the Government has characterized as "an administrative oversight," SSgt. Pummill's updated SGLV 8286 was not filed in his service record book, nor was it mailed to the appropriate office for insertion into the Marine Official Military Personnel File.

SSgt. Pummill was deployed to Iraq on July 17, 2005. On or about October 20, 2005, he was killed while conducting combat operations in Iraq as part of Operation Iraqi Freedom. Ms. Pummill claimed full entitlement to the benefits under the Policy; however, because the updated SGLV 8286 was missing, the only SGLV 8286 in SSgt. Pummill's personnel file was one dated December 16, 2004. The December 16, 2004, SGLV 8286 lists Lynn B. Pummill, SSgt. Pummill's mother, as a 50% beneficiary and SSgt. Pummill's minor son as a 50% beneficiary. Lynn Pummill and SSgt. Pummill's minor son also made claims to the Policy proceeds.

2

On December 6, 2005, counsel for Prudential notified the Casualty Assistance Officers assigned to SSgt. Pummill's dependents that the Office of SGLI had directed Prudential to file an Interpleader Complaint so that Ms. Pummill, Lynn Pummill, and SSgt. Pummill's minor son could litigate their entitlement to the proceeds. Thereafter, on December 12, 2005, Ms. Pummill filed a Complaint in the United States District Court for the Eastern District of Pennsylvania against Prudential, Lynn Pummill and Jamie M. Worthington, parent and natural guardian of SSgt. Pummill's minor son, claiming entitlement to the entire Policy proceeds ("the Pennsylvania action").

On or about July 14, 2006, the parties in the civil action reached and signed a settlement agreement. Under the terms of the settlement agreement, Ms. Pummill received $150,000.00 of the Policy proceeds. After attorney's fees, Ms. Pummill's net proceeds was $86,750.00.

On April 28, 2006, prior to the parties' settlement in the Pennsylvania action, Ms. Pummill filed a claim under the FTCA with the Department of the Navy for the $400,000.00 she claimed she was due under the Policy. In her claim, Ms. Pummill alleged that the Department of the Navy was liable because it had negligently failed to process SSgt. Pummill's SGLV 8286. Ms. Pummill's claim was denied on September 20, 2006, and she subsequently initiated this action. Ms. Pummill moves for summary judgment, arguing that she is entitled to judgment as a matter of law. The Government argues that Ms. Pummill's Complaint must be dismissed for failure to state a claim.

## II. STANDARD OF REVIEW

The Government contends that the Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. When a court considers a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in a complaint will be construed in the nonmoving party's favor and treated as true. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). If

3

a claim has been adequately stated in the complaint, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, ___ U.S.___, 127 S.Ct. 1955, 1969 (2007). To adequately state a claim for relief, the pleader must set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65(alteration in original, internal quotation marks and citations omitted).

However, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(c). Thus, when a party files a motion to dismiss for failure to state a claim, a district court may convert the motion to one for summary judgment if (i) matters outside the pleadings are presented to the court, and (ii) all parties are given notice that the dismissal motion may be treated as one for summary judgment. *See* FED.R.CIV.P. 12(d). The Court of Appeals for the Fourth Circuit has held that "when a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). In the instant case, both parties have submitted exhibits not referenced in the pleadings. Accordingly, the court will analyze the Government's motion as one for summary judgment.

### III. ANALYSIS

In the Complaint, Ms. Pummill alleges that the Government negligently failed to process properly SSgt. Pummill's SGLV 8286, failed to have proper procedures in place to ensure that all SGLV 8286 forms were processed, and failed to properly supervise its personnel to ensure that all SGLV 8286 forms were processed. Ms. Pummill alleges that as a result of such negligence, SSgt. Pummill's last-executed SGLV 8286 form was not in his personnel file, resulting in damages to her. The Government

4

contends that is entitled to judgment as a matter of law, because (1) the Complaint fails to state a cognizable claim, (2) the Government's actions were not the proximate cause of Ms. Pummill's damages, and (3) her claim is preempted by SGLI.

## A. Preemption

The Government, only in a footnote, "notes that it may have a preemption claim that SGLI preempts North Carolina tort law on this issue, as SGLI's overall structure indicates Congress' intent that SGLI should be the sole and exclusive mechanism for determining and deciding claims founded upon the SGLI, such that Plaintiff cannot seek relief under the FTCA." Mem. in Support of Mot. to Dismiss [DE-24] at p. 11 n.11. The Government concedes that the Fourth Circuit Court of Appeals has not addressed the issue, and that a decision from the Second Circuit Court of Appeals, *Devlin v. United States*, 352 F.3d 525 (2d. Cir. 2003) casts doubt on its argument.

In *Devlin*, the plaintiff's brother was a letter carrier for the United States Postal Service ("USPS"), and as such, he was covered by the Federal Employees Life Insurance Program established by the Federal Employees Group Life Insurance Act ("FEGLIA"), 5 U.S.C. § 8701 *et seq. Id.* at 527. Prior to his death, plaintiff's brother attempted to change the beneficiaries of his policy from his mother and nephew to his mother and sister, the plaintiff. USPS Personnel Office employees provided a change of beneficiary form to plaintiff's brother and witnessed the completion and signing of the form. *Id.* The employees, however, did not forward the form to the proper office. *Id.* at 528. After her brother died several years later, the plaintiff filed a claim for the life insurance proceeds with the company administering the program, which was denied in favor of the nephew as the beneficiary. *Id.* The plaintiff thereafter filed an administrative claim with the USPS for negligently failing to comply with

5

the filing requirements. When the claim was denied, the plaintiff filed suit against the United States pursuant to the FTCA for negligence.

The Government in *Devlin* contended that the suit must be dismissed, arguing, *inter alia*, that FEGLIA preempted any remedies available under the FTCA or state tort law. The Second Circuit rejected the Government's argument, explaining that

> Plaintiff's tort claim does not seek to function as an alternative enforcement mechanism to obtain benefits under a FEGLIA policy; nor does the claim seek to "give legal effect"–in any meaningful sense of that phrase–to [the decedent's] intent to substitute Plaintiff for his nephew as a beneficiary. And, finally, Plaintiff's claim does not seek to estop the government from refusing to pay her FEGLIA benefits under a FEGLIA policy; she concedes that she is not a proper beneficiary of such benefits. Indeed, that is precisely her point; her allegation is that the postal employee's negligence prevented her from becoming a proper designee under the policy. She is seeking to be compensated for that negligence.

*Id.* at 544-45 (footnotes omitted). Although the Second Circuit's decision regarding an analogous statute is in no way binding authority upon this court, the undersigned nonetheless finds the rationale of *Devlin* to be both persuasive and applicable to the instant case. As in *Devlin*, Ms. Pummill is not attempting to declare herself the proper beneficiary under SSgt. Pummill's SGLI policy, nor is she seeking benefits under the SGLI policy. Rather, she is seeking to recover damages she suffered as a result of the Government's admitted failure to properly process the SGLV 8286. The court concludes that Ms. Pummill's cause of action is not preempted by the SGLI.

## B. Failure to state a claim

The FTCA provides "for 'a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment.'" *Wood v. Standard Prods. Co., Inc.*, 671 F.2d 825, 829 (4th Cir.

6

1982)(quoting *United States v. Orleans*, 425 U.S. 807, 813 (1976)); 28 U.S.C. § 1346(b). Under the FTCA, liability is determined according to the substantive law of the state where the alleged tort occurred. *Harris v. United States* 718 F.2d 654, 657 (4th Cir. 1983). In this case, the alleged conduct occurred in North Carolina, therefore this court must apply North Carolina law.

In this case, Ms. Pummill has framed this action as one for negligence. Under North Carolina law, to recover for negligence, "a plaintiff must establish (1) a legal duty, (2) a breach thereof, and (3) injury proximately cause by such breach." *Mozingo v. Pitt County Memorial Hosp.*, 331 N.C. 182, 187, 415 S.E.2d 341, 344 (1992). The Government, however, contends that this case is more appropriately viewed through the lens of a claim for tortious interference with the expectance of an inheritance. By so arguing, the court perceives that the Government implicitly is arguing that North Carolina law does not recognize a negligence claim as set forth by Ms. Pummill. Therefore, rather than delving into the Government's arguments regarding an intentional tort which was not pleaded by Ms. Pummill, the court will instead address the real threshold question: under North Carolina law, may an intended beneficiary of a life insurance policy sue an insurance company or agent for negligence in processing a beneficiary designation form?

Ms. Pummill concedes that the state courts of North Carolina have never addressed this precise issue. What North Carolina courts have addressed, however, is that " '[t]he law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm, and calls a violation of that duty negligence.' " *Camalier v. Jeffries*, 340 N.C. 699, 716, 460 S.E.2d 133, 141 (1995)(quoting *Council v. Dickerson's, Inc.* 233 N.C. 472, 474, 64 S.E.2d 551, 553 (1951)). Thus, North Carolina courts have held that:

> where an insurance agent or broker undertakes to procure a policy of
> insurance for another, affording protection against a designated risk, the

7

> law imposes upon him the duty, in the exercise of reasonable care, to perform the duty he has assumed and within the amount of the proposed policy he may be held liable for the loss properly attributable to the negligent conduct.

*Wiles v. Mullinax*, 267 N.C. 392, 395, 148 S.E.2d 229, 232 (1966). In addition to recognizing actions for negligent failure to procure insurance, the North Carolina Court of Appeals also has recognized that an insurance agent may be held liable for dispensing negligent advice. *See Bradley Freight Lines, Inc. v. Pope, Flynn & Co., Inc.*, 42 N.C. App. 285, 290-91, 256 S.E.2d 522, 525-26 (1979); *R-Anell Homes, Inc. v. Alexander & Alexander, Inc.*, 62 N.C. App. 653, 657, 303 S.E.2d 573, 577 (1983). As a corollary, therefore, it would appear that under North Carolina law, when an entity or insurance agent undertakes the duty to process a beneficiary designation form, as the Government did here, it would have a duty to do so properly.

The question still remains, however, whether that duty is owed to the intended beneficiary, or to the insured. The North Carolina Court of Appeals has noted that "a *beneficiary* [of a life insurance policy] may bring a cause of action for negligence against and recover from an insurance company with whom the insured alone has dealt." *Pierson v. Buyher*, 101 N.C. App. 535, 537, 400 S.E.2d 88, 90 (1991)(emphasis in original). The North Carolina Supreme Court, when considering *Pierson* on appeal, assumed, without deciding, that the North Carolina Court of Appeals was correct in stating that "a beneficiary of a life insurance policy can bring an action for negligent advice of an insurance agent to the purchaser of the policy." *Id.*, 330 N.C. 182, 184, 409 S.E.2d 903, 905. *Cf. Hargett v. Holland*, 337 N.C. 651, 447 S.E.2d 784 (1994)(examining statutes of repose in action for negligence by beneficiaries against attorney who drafted testator's will). Where, as here, the court must predict what ruling the North Carolina courts would recognize, the court places weight on the North Carolina Court of Appeals' statement in *Pierson* that a beneficiary may recover in negligence from an insurance company. *See*

8

*Private Mortgage Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002)(explaining that where a state's supreme court has not spoken on a particular issue, the state's intermediate appellate court "constitute[s] the next best indicia of what state law is"). Thus, this court concludes that under North Carolina law, an intended beneficiary of a life insurance policy may bring an action for negligence against one who undertakes to process the beneficiary designation form.

## C. Proximate Cause

The Government argues that even if Ms. Pummill has alleged a cognizable claim for negligence, she cannot prevail because its failure to file the SGLV 8286 in Ssgt. Pummill's service record book, or to mail the SGLV 8286 to the appropriate office for insertion into the Marine Official Military Personnel File, was not the proximate cause of her failure to recover the entire $400,000 in policy proceeds. In North Carolina, proximate cause is defined as "a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed." *Adams v. Mills*, 312 N.C. 181, 192, 322 S.E.2d 164, 171 (1984). In this case, the Government argues that its failure to properly process the SGLV 8286 cannot be the proximate cause of Ms. Pummill's injuries because (1) she was still the proper beneficiary under Ssgt. Pummill's Policy, and (2) her decision to settle the Pennsylvania action is what prevented her from recovering the full amount of the proceeds.

The Government's first argument asks the court to engage in a futile academic exercise and misapprehends the logic of Ms. Pummill's case. First, the court notes that the Pennsylvania Action's litigation over the identity of the proper beneficiary was the natural result of the Government's actions.

9

It is undisputed that, but for the Government's failure to process properly the SGLV 8286 form, no competing claims to the insurance proceeds would have existed. The record indicates that because of the competing claims, which were the result of the Government's "administrative oversight," Ms. Pummill was forced to litigate her right to the proceeds. *See* Mem. in Support of Mot. to Dismiss [DE-24], Ex. 4, Letter from Prudential's legal counsel (explaining that competing claims had arisen as to Ssgt. Pummill's insurance proceeds, and that consequently "our client has directed us to file an Interpleader Complaint in federal court pursuant to Federal Rule of Civil Procedure 22, so that the life insurance proceeds can be deposited into the Court and the parties can litigate their entitlement to the proceeds"). Thus, even if Ms. Pummill was the proper beneficiary under the Policy, as the Government insists, she still had to litigate her status as the proper beneficiary. The necessity of litigation was a completely foreseeable result of the Government's "administrative oversight," regardless of whether Ms. Pummill was the proper beneficiary or not. Moreover, the court perceives that Ms. Pummill contends that she was damaged, in and of itself, by being compelled to litigate her right to the proceeds.

Once in litigation, the court cannot conclude, as the Government suggests, that Ms. Pummill's decision to settle the claim negated the Government's role in her failure to receive the full amount of the insurance proceeds. Again, the Government contends that Ms. Pummill was the proper beneficiary under the Policy, and she therefore would have prevailed in the Pennsylvania action, but for her decision to settle the claim to the proceeds. Under the Government's reasoning, a plaintiff who is forced to litigate her right to insurance proceeds because of an agent's negligence may settle the claim, and mitigate the damages, and thereafter sue the negligent agent, *only* if she is certain to lose in the interpleader action. Certainty, however, is not the hallmark of any litigation, let alone litigation over the entitlement to insurance proceeds. Based on the Government's argument, a plaintiff in the more

10

typical situation, i.e., where the result of the interpleader action is uncertain, would be forced to choose between two options. First, she could settle the interpleader action, presumably for less than the entire amount of the proceeds, and thereby forego any right of recovery against the negligent agent. Second, she could fully litigate the interpleader action and risk losing the entitlement to *any* proceeds and then hope to recover the loss against the negligent agent in the event of an adverse ruling. Under the Government's logic, the safest option for a plaintiff in the typical case would be to fully litigate the interpleader action. That logic, of course, flies in the face of the settled public policy encouraging the private settlement of litigation. *See, .e.g., Crandell v. United States*, 703 F.2d 74, 75 (4th Cir. 1983)("Public policy, of course, favors private settlement of disputes."); *Penn Dixie Lines, Inc. v. Grannick*, 238 N.C. 552, 555, 78 S.E.2d 410, 413 (1953)(explaining that "[t]he law favors the settlement of controversies out of court . . . by securing to every man the opportunity to negotiate for the purchase of his peace without prejudice to his rights").

Thus, the court concludes, based on the undisputed facts, that the Government's failure to process properly the SGLV 8286 proximately caused Ms. Pummill to recover less than the full amount of the proceeds under the Policy.

## D. Damages

Ms. Pummill contends that she is entitled to judgment in the amount of $313,250.00. She apparently arrives at this number by taking the $400,000.00 in Policy proceeds, and subtracting the net proceeds she received after settling the Pennsylvania Action: $86,750.00. The terms of the settlement of the Pennsylvania Action, however, provided Ms. Pummill with $150,000.00. She then paid her attorney in the Pennsylvania Action $60,000.00, and also paid Jamie Worthington $3,250.00 for an outstanding credit card bill of SSgt. Pummill, leaving her with a net award of $86,750.00. Neither party

11

has addressed the propriety of compensating Ms. Pummill for the attorney's fees paid in the Pennsylvania Action and the funds she paid Ms. Worthington. The court, therefore, requests that the parties file briefs, within fifteen (15) days of the filing date of this order, addressing the proper measure of damages in this action. The parties may file responses to the opposing party's brief ten (10) days after it is filed.

## IV. CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss [DE-23] is DENIED. Ms. Pummill's Motion for Summary Judgment [DE-21] is ALLOWED; however, the court requests that the parties file briefs, within fifteen (15) days of the filing date of this order, addressing the proper measure of damages in this action. The parties may file responses to the opposing party's brief ten (10) days after it is filed. After considering the parties' briefs, the court will direct the Clerk of Court to enter judgment accordingly. Moreover, the Clerk of Court is DIRECTED to remove this matter from the undersigned's July 7, 2008, term of court.

SO ORDERED.

This the 7th day of May, 2008.

James C. Fox
Senior United States District Judge

12

Case 7:06-cv-00160-F   Document 32   Filed 05/07/08   Page 12 of 12